IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN GRAYSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 1705 |
| | ) | |
| v. | ) | Hon. Virginia M. Kendall |
| | ) | |
| THE CITY OF AURORA, ILLINOIS, | ) | |
| Aurora Police Sergeant KEARBEY, | ) | |
| Aurora Police Investigators WALLERS, | ) | |
| SOTO, KINNEY, and ROBERTSON, | ) | |
| Aurora Police Detectives WEST, | ) | |
| THOMPSON, GUMZ, and as-yet | ) | |
| Unknown Current or Former City of | ) | |
| Aurora, Illinois Employees and/or as-yet | ) | |
| Unknown Aurora Police Department | ) | |
| Employees, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jonathan Grayson sued the City of Aurora, Illinois; Aurora Police Sergeant T. Kearby (Star 454); Aurora Police Investigators Robb Wallers (Star 279), Alvin Soto (Star 210), Kinney (Star 109), and R. Robertson (Star 225); Aurora Police Detectives Dan West (Star 245), J. Thompson (Star 309), and Michael Gumz (Star 165); and as-yet Unknown Current or Former City of Aurora, Illinois Employees and/or as-yet Unknown Current or Former Aurora Police Department Employees ("Defendants") for violations of his constitutional rights stemming from being wrongfully imprisoned for eleven years. Grayson seeks to compel discovery of the individual Defendants' personnel files, citizen complaint files, and complete employee complaint histories by Defendant City of Aurora ("Aurora"). For the following reasons, Grayson's Motion to Compel Discovery is granted, subject to the limitations outlined below.

1

## BACKGROUND

On June 19, 2013, Grayson sent Aurora his First Set of Requests for Production. (Dkt. No. 44-2 at pp. 5–12.) Paragraphs 15 through 17 therein request: "All files maintained by the Department relating to any Defendant Officer, including a complete personnel file, disciplinary history, employee complaint history and general history printout;" "All employment evaluations maintained by the Department relating to each Defendant;" and "All Documents maintained by the Department relating to any Complaints of any kind (internal or citizen, etc.) regarding each Defendant Office. This request specifically includes but is not limited to all Complaints and Lawsuits filed against each officers. [*sic*] This Request seeks all such Documents without temporal limitation." (*Id.* at p. 8.) Aurora's responses to paragraphs 15 through 17 of Plaintiff's First Set of Production Requests on August 6, 2013[1] were: "Objection, relevance;" "Objection, relevance;" and "Objection, request #17 is vague, overbroad in time and scope and unduly burdensome. It is not reasonably calculated to lead to any relevant discovery admissible as evidence in this matter. Without waiving said objections, Defendant will produce any OPS files for the past five years upon entry of the appropriate protective order," respectively. (*Id.* at p. 21.)

On August 22, 2013, Grayson's attorney sent a letter to Aurora providing further explanation as to why he believes the documents requested are relevant and not overbroad in time, vague, or unduly burdensome. (Dkt. No. 44-3 at pp. 1–3.) Grayson's attorney sent another letter on September 10, 2013 indicating that she had not heard from Aurora regarding the August 22nd letter. (*Id.* at p. 4.) A phone conversation subsequently took place and was memorialized in a letter Grayson's attorney sent to Aurora's attorney on September 18, 2013. (*Id.* at 6–7.)

---

[1] Grayson does not argue that Aurora waived its objections to his discovery request because it did not object within the 30-day period required under Fed. R. Civ. P. 34(b)(2)(A). The Court therefore abstains from addressing this issue. *See Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006) (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992))

Therein, Grayson's attorney describes an impasse regarding Aurora's refusal to produce the individual Defendants' personnel files, citizen complaint files, and complete employee complaint histories. (*Id.*)

## **STANDARD OF REVIEW**

The federal notice pleading system contemplates that parties will have broad discovery to investigate the facts and help define and clarify the issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993). Accordingly, Federal Rule of Civil Procedure 26(b)(1) gives expansive power to discover information "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Oppenheimer*, 437 U.S. at 351 (information is relevant if it "bears on" or might reasonably lead to information that "bears on" any material fact or issue in the action); *EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 369 (7th Cir. 2011). Because discovery is concerned with "relevant information"—not "relevant evidence"—the scope of relevance for discovery purposes is necessarily broader than it is for trial evidence under Federal Rule of Evidence ("FRE") 401. *See, e.g.*, *Konica Minolta*, 639 F.3d at 369 (EEOC subpoena); *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002) (EEOC subpoena) (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (IRS subpoena)).

District courts addressing discovery-related disputes in cases involving *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978) claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights. *See Castillo*

*v. City of Chicago*, 2012 WL 1658350, *2 (N.D. Ill. May 11, 2012); *Tanner v. City of Waukegan*, 2011 WL 686867, *8 (N.D. Ill. Feb. 16, 2011); *Medina v. City of Chicago*, 100 F.Supp.2d 893, 894 (N.D. Ill. 2000) ("[T]he decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of discovery and proof.")  However, liberal discovery does not mean unlimited discovery, *Oppenheimer*, 437 U.S. at 351–52, and Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and dictate its sequence. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

Motions to compel discovery are governed by Federal Rule of Civil Procedure 37, which requires the movant to certify that it has tried in good faith the resolve the discovery dispute without court interference. Fed. R. Civ. P. 37(a)(1).  Furthermore, under Local Rule 37.2, the moving party must show that (1) after consultation in person or by telephone and good faith attempts to resolve differences the parties are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's.  L.R. 37.2.  District courts enjoy broad discretion when considering motions to compel, *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001), and have "consistently adopted a liberal interpretation of the discovery rules." *See, e.g.*, *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (quoting *Wilstein v. San Tropai Condominium Master Assoc.*, 189 F.R.D. 371, 375 (N.D. Ill. 1999)).

## DISCUSSION

First, Grayson has satisfied the requirements of Federal Rule of Civil Procedure 37 and has complied with Local Rule 37.2.  He made good faith efforts to resolve discovery issues with Aurora before filing his Motion to Compel Discovery.  Attached to his motion are copies of the letters he sent to Aurora regarding their discussions, in which he explains the extent to which

Aurora is objecting to his requests. Aurora does not dispute that it received these letters and discussed production of the documents at issue with Grayson. Accordingly, Grayson's Motion to Compel Discovery is properly before the Court.

Grayson asks Aurora to produce the individual Defendants' complete personnel files, citizen complaint files, and complete employee complaint histories. Aurora's objection is that Grayson's *Monell* claims do not entitle him to any records dated after his 2002 conviction. (Dkt. No. 50 at p. 4.)

I.    **Grayson's *Monell* Claim**

   A.    **Relevance of Requested Documents**

Grayson's request for the individual Defendants' personnel and complaint files is reasonably calculated to lead to the discovery of admissible evidence relevant to his *Monell* claim. Grayson may not recover against Aurora under § 1983 unless he is able to demonstrate that Aurora's official policy, widespread practice, or custom caused the deprivation of his constitutional rights. *See Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Kujawski v. Bd. of Comm'rs of Bartholomew Cty.*, 183 F.3d 734, 737 (7th Cir. 1999)); *see also Monell*, 436 U.S. at 694. Although there is no clear consensus as to how frequently conduct must occur to constitute a "widespread policy or custom," Grayson must demonstrate that the alleged violation of his constitutional rights was not merely a random event. *See Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). This may be accomplished by proving an implicit policy, gaps in expressed policies, or a series of violations that lay the premise of deliberate indifference. *Id.* (citations omitted).

Both parties cite *Wright v. City of Chi.*, 2010 WL 4875580 (N.D. Ill. Nov. 23, 2010) (Brown, Mag. J.), which this Court cites in *Awalt v. Marketti*, 2012 WL 6568242, at *5 (N.D. Ill.

Dec. 17, 2012) (Kendall, J.), as supporting their arguments. In *Wright*, the plaintiff alleges *Monell* claims stemming from a series of arrests and property seizures he was subjected to during the course of a two-year period. *Id.* at *1. His discovery request to the City of Chicago Police Department asked it to:

> (1) [I]dentify every single Chicago police officer who had been subject to an investigation of misconduct for police brutality, false imprisonment, malicious prosecution, assault and battery, improper impoundment of vehicles, and section 1983 complaints from 2004 to 2010;
> (2) [P]roduce all records relating to other suits against the City of Chicago or its police officers related to accusations of false imprisonment, malicious prosecution, assault and battery, improper impoundment of vehicles, and section 1983 complaints from 2004 to 2010; and
> (3) [P]roduce all investigative files from 2004 to 2009 for all civilian abuse complaints against City of Chicago police officers.

*Awalt*, 2012 WL 6568242 at *5 (citing *Wright*, 2010 WL 4875580 at *2). The *Wright* court found that discovery this broad would permit the plaintiff to investigate the disciplinary system of the entire Chicago Police Department. 2010 WL 4875580 at *3. This would be tantamount to a claim that the City of Chicago was vicariously liable for its employees' civil rights violations that is impermissible under *Monell*. *Id.* at *2–3. *Monell* only allows a plaintiff to bring claims arising from the policies and practices that are the "*moving force* behind the specific constitutional violations" alleged. *Id.* at *3 (citing *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2010)) (emphasis in original). As such, the *Wright* court narrowed the scope of the plaintiff's discovery to the subjects alleged in his complaint. 2010 WL 4875580 at *3. Notably, the court permitted "discovery on the disciplinary history of the defendants" and "reasonable discovery directed to learning if claims of similar misconduct have been brought in the past against officers assigned to the [defendants' district]." *Id.*

The discovery Grayson seeks is far narrower than the plaintiff's in *Wright* and directly relates to the allegations contained in his Complaint. Grayson most specifically alleges *Monell* violations in Count I of his Complaint:

> 51. The misconduct described in this Count was undertaken pursuant to a routine practice of the Aurora Police Department to pursue wrongful convictions through profoundly flawed investigations and coerced evidence. In this way, *the Defendant City of Aurora violated Mr. Grayson's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations*.
>
> 52. These widespread practices, so well-settled as to constitute *de facto* policy in the Aurora Police Department, were able to exist and thrive because municipal policymakers with authority over the Department exhibited deliberate indifference to the problem, thereby effectively ratifying it.
>
> 53. The widespread practices described in the preceding paragraphs were allowed to flourish because the municipal defendants declined to implement sufficient training and/or enforce legitimate oversight and punishment.

(Dkt. No. 1 at ¶¶ 51–53) (emphasis added). He further alleges related violations in Count III (Failure to Intervene), Count IV (Conspiracy to Deprive Constitutional Rights), and Count VI (Negligent Supervision). (*Id.* at ¶¶ 65, 72, 79.) To support these claims, Grayson asks the Court to compel Aurora to produce the individual Defendants' personnel and complaint records. The documents may contain information that other similar complaints were filed against the individual Defendants but that those individuals were not punished and, in some cases, were even rewarded with promotions. The documents may also contain none of this information, or information that supports a conclusion detrimental to Grayson's *Monell* claims. But in either event, the request is request reasonably tailored to produce information that "bears on" Grayson's allegations that Aurora had a widespread policy permitting wrongful convictions. *See*

7

*Oppenheimer*, 437 U.S. at 351; *Taylor v. Kachiroubas*, 2013 WL 6050492, at *4 (N.D. Ill. Nov. 15, 2013) (in granting bifucation, the court found that the alleged actions of individual police officers were the source of the harm to the plaintiffs and the basis for the plaintiffs' *Monell* claims, and that any alleged municipal policy necessarily exerted harm on the plaintiffs through the officers, not independently of them)

B.   **Time Period of Requested Documents**

In order to prevail on a *Monell* theory of liability, Grayson must prove more than just one, or two, or even three instances of similar constitutional violations. *See Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1998); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002)). Instead, he must show that his constitutional rights were violated as a result of a widespread policy, practice, or custom that Aurora was aware of but failed to correct. *See Thomas*, 604 F.3d at 303; *Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010). "Official policies that give rise to liability under section 1983 include policies promulgated by policymakers, the acts of policymaking officials, and practices so persistent and widespread as to practically have the force of policy for the entity in question." *See Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011).

Grayson requests personnel and complaint documents for the individual Defendants dated through his exoneration on March 6, 2012. (Dkt. No. 44 at p. 4.) In his Complaint, Grayson alleges that he was wrongfully convicted of murder due to the misconduct of Aurora police officers that was part of a widespread pattern of similar misconduct. (Dkt. No. 1 at ¶¶ 11–41, 51–53.) Although Aurora would like to limit discovery to the period ending when Grayson was convicted in 2002, the Court sees no reason to impose such a limitation. Proving *Monell* liability requires demonstrating a widespread pattern of constitutional violations that a municipality knew

of but failed to correct. *See Thomas*, 604 F.3d 303. Grayson was convicted in 2002, but alleges that at no point during the time between then and his exoneration in 2012 did Aurora or the individual Defendants come forward to admit they violated his constitutional rights or take independent action to right their wrongs. Instead, it took the testimony of a confidential informant to persuade members of the Aurora Police Department (not named in this lawsuit) to reexamine his case, a process that did not result in Grayson's release from prison until March 6, 2012. In the meantime, Grayson alleges that neither the individual Defendants nor Aurora were forthcoming with exculpatory evidence. The Court finds this allegation is sufficient to warrant discovery of the individual Defendants' personnel and complaint files dated through March 6, 2012, and that this time period is not overly broad. Those documents are relevant to show whether Grayson's allegations are sufficiently widespread to satisfy the *Monell* standard. For example, if there are additional complaints about the same individual Defendants during this time, Grayson's *Monell* claims are strengthened; if there are not, his claims are weakened. *See Taylor*, 2013 WL 6050492 at *4.

Grayson asks the Court to compel Aurora to produce the complete personnel and complaint files for the individual Defendants through the present date because Grayson's petition for a Certificate of Innocence is still pending in the Illinois courts. (Dkt. No. 51 at pp. 5–6.) In Illinois, a Certificate of Innocence is an administrative and clerical remedy offered to individuals who have been wrongfully convicted of crimes that will be issued after his conviction has been vacated if, in a separate proceeding, he can prove his innocence (again) by a preponderance of evidence. 735 ILCS 5/2-702. This process is separate and apart from that which exonerated Grayson. Under the statute, Grayson's petition for a Certificate of Innocence may be denied, even though his conviction has already been vacated. Because this Court cannot predict the

outcome of that proceeding, and in an effort to ease Aurora's production burden at this stage of the litigation, Aurora is not required to produce the individual Defendants' personnel and complaint records for the period after March 6, 2012 unless and until the Illinois court grants Grayson a Certificate of Innocence. If the Certificate is granted, Aurora must produce the requested documents for the period between March 6, 2012 and the date the Certificate is issued. If the Certificate is denied, then Aurora need not produce those documents.

Lastly, Aurora argues that records dated after Grayson's conviction should not be discoverable because Grayson's *Monell* claims allege only "failure-to-train" policies. (Dkt. No. 50 at p. 3.) As such, the individual Defendants could have only received training that harmed Grayson before Grayson's conviction, rendering irrelevant any documents from after that date. Aurora's argument is not persuasive because on the very same page it also characterizes Grayson's *Monell* theory as including "deliberate indifference." A *Monell* claim alleging deliberate indifference carries with it no such implied date limitation—Aurora and the individual Defendants could have continued being indifferent throughout Grayson's term of incarceration. The information contained in the personnel and complaint files for the individual Defendants from 2002 through March 6, 2012 could show the individual Defendants engaged in similar conduct with other criminal suspects, and that Aurora similarly disregarded these actions or even rewarded the individual Defendants for that conduct. *See Taylor*, 2013 WL 6050492 at *4. Perhaps the individual Defendants starting their streak of constitutional violations with Grayson, and Aurora's deliberate indifference began at that point and continued throughout the term of his incarceration. Or, just as plausibly, the records could contain none of this information. Whatever information the records contain, the Court finds Aurora's attempt to narrow discovery based on its limited interpretation of Grayson's *Monell* claims is without merit.

10

**II.    FRE 404(b)**

Grayson's allegations are not limited to his *Monell* claims against Aurora. His Complaint also alleges constitutional violations by the individual Defendants themselves. (*E.g.*, Dkt. No. 1 at ¶¶ 45–50.) Grayson argues that the information contained in the individual Defendants' personnel and complaint files could become admissible evidence under FRE 404(b) should the case go to trial. Aurora does not address this argument.

As outlined above, the parties are entitled to broad discovery to investigate and develop their claims and defenses. And "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues," nor is it limited "to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer*, 437 U.S. at 351 (citations omitted). Here, Grayson requests discovery of the individual Defendants' personnel files, citizen complaint files, and complete employee complaint histories. This information is regularly found to be discoverable because it could contain admissible FRE 404(b) evidence by courts in this district. *See, e.g.*, *Lepianka v. Vill. of Franklin Park*, 2004 WL 626830, at *1–2 (N.D. Ill. Mar. 26, 2004) (permitting discovery of police officer defendants' disciplinary record in a 42 U.S.C. § 1983 claim alleging excessive force and false arrest because that discovery may turn up evidence admissible under FRE 404(b)). The Court therefore finds that the records are also discoverable because they may contain admissible FRE 404(b) evidence.

**III.    Confidentiality**

Grayson asks for both the personnel and complaint files for the individual Defendants. As discussed above, the Court finds that Grayson is entitled to discovery of both file types. *See also Smith v. Sharp*, 2013 WL 2298142, *3 (N.D. Ill. May 24, 2013); *Vodak v. City of Chicago*,

2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004); *Terry v. Zernicke*, 1996 WL 5183, at *2 (N.D. Ill. Jan. 2, 1996). However, the Court recognizes that certain information contained in these files is particularly sensitive and could expose the individual Defendants to unintended harm. Therefore, Aurora may redact all confidential personal information about the individual Defendants from these files prior to producing them to Grayson. This information includes but is not limited to home addresses, telephone numbers, family histories, family member information, and insurance and benefit information. *See Sharp*, 2013 WL 2298142 at *3. Any other information in both the personnel and complaint files is discoverable and must be produced to Grayson without redaction. The Court anticipates that the Defendants, including Aurora, may file a protective order, but notes in an abundance of caution that the documents produced and their contents are not to be disseminated in any way by Grayson beyond his legal team (i.e., his attorneys, administrative staff, and expert witnesses) without this Court's prior approval.

## CONCLUSION

For the reasons set forth above, the Court grants Grayson's Motion to Compel Discovery. The Court limits this discovery to the named individual Defendants only and does not permit discovery of the personnel files, citizen complaint files, and employee complaint histories for any other individuals, unless and until those individuals are subsequently added as parties to the Complaint.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 19, 2013